UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| PETER K HANSCHE | ECF CASE |
|---|---|
| Plaintiff, | |
| v. | |
| | No.: _____ |
| CITY OF NEW ORLEANS and | JURY TRIAL REQUESTED |
| Lt. JIMMIE L. TURNER | |
| Defendants. | |

INTRODUCTION

1.  This action concerns the long-standing hostile and discriminatory work environment that male employees at the Homicide Unit of New Orleans Police Department endured. This work environment was no secret. Commander Doug Eckert, Chief Deputy Rannie Mushatt and others, knew about it, saw it, did nothing and worse, protected the bad actor. The City of New Orleans and the New Orleans Police Department implemented an "unclassified" at-will employment system which created a culture of ineffective "yes men" commanders/supervisors hand picked by Superintendent Harrison with no civil service protection.[1] These supervisors turned a

---

[1] In 2011 the Commander position was neither an unclassified or classified position. In 2014-2015 Superintendent Harrison petitioned and was allowed to move the Commander position to "unclassified" which allows for no protection under Civil Service Rules.

blind eye to misconduct instead of actively monitoring the work environment and reporting complaints and were the primary contributing factors in this case.

The illegal conduct includes but is not limited to:

- Repeatedly calling Plaintiff names insinuating that he and his associates were homosexuals and/or were engaged in homosexual relationships.

- Repeated remarks implying two male friends in the unit were gay lovers (romantically involved), including asking which of them was "the big spoon" and "the little spoon" and asking one man if he was "pregnant for" Plaintiff.

- Massaging a male detective's shoulders while making suggestive remarks about taking a ride on a detective's motorcycle.

- Persistently initiating physical contact with Plaintiff including kissing Plaintiff, grabbing and embracing the Plaintiff from the rear in clear view of detectives and supervisors in the Homicide Unit.

- Repeated instances of name-calling including referring to Plaintiff as a "cracker" and stating to other white males that all "white people look the same."

- Allowing Lt. Jimmie Turner to keep squads racially segregated by assigning black detectives to work with only blacks except for one that Lt. Turner called "the token" and ostracizing that group from other detectives.

- Taking no action: (a) against a male supervisor who openly verbally harassed several male detectives and has stated that he was showering and "thinking" of them while touching his genitals and (b) allowing racial segregation and racial favoritism in promotions to go unchecked for years at the Homicide Unit and (c) allowing kissing and embracing right in front of the entire Homicide Unit without any consequence to Lt. Turner.

- Retaliating against, restricting time off, forcing employees to take leave without pay when they have annual leave, assigning less favorable work, over-assigning work, and failing to promote individuals who did not condone or go along with Lieutenant Jimmie Turner's sexual and racial misconduct.

- Downgrading other complaints of sexual harassment and allowing detectives accused of harassment to be promoted.

2. Plaintiff Sergeant Peter K. Hansche ("Plaintiff" or "Sgt. Hansche") asserts the following claim against Defendant City of New Orleans ("City"): sex and race based discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.* ("Title VII") and Louisiana State law La. R. S. 23:302 et seq.; hostile work environment under Title VII and La. R.S. 23:302 et seq; and retaliation under Title VII and Louisiana State law .

3. Plaintiff asserts civil sexual assault against Lieutenant Jimmie Turner under La. Civil Code Article 3496.2.

## JURISDICTION, VENUE & EXHAUSTING ADMINISTRATIVE REMEDIES

4. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff's claims arise under Title VII, 42 U.S.C. §§ 2000e (f) -(5)(e) and (5)(f)(3).

5. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's Louisiana state law claims.

6. Venue is proper under §1391(b)(2) as a substantial part of the events giving rise to the claims occurred in this District.

7. Plaintiff has complied fully with all prerequisites and the jurisdiction of this court under Title VII and has received a right to sue letter[2].

---

[2] Exhibit A- Right to Sue Letter

## THE PARTIES

8. Plaintiff, Sergeant Peter K. Hansche, a person of the full age of majority and a resident of the State of Louisiana, filed a sex and race discrimination charge with the U.S. Equal Employment Opportunity Commission against City of New Orleans.

9. City of New Orleans is a municipality located in New Orleans, Louisiana and employs Lieutenant Jimmie Turner and Sergeant Peter K. Hansche.

10. Lieutenant Jimmie Turner ("Lt. Turner") is an individual who is a resident of Orleans Parish.

## STATEMENT OF FACTS

11. Sgt. Hansche is a distinguished officer with the New Orleans Police Department for over 26 years and Vice President of the Police Association of New Orleans.

12. Sgt. Hansche is a white male hired by the City of New Orleans on February 15, 1993 as a classified employment position and was promoted to the Homicide Unit on or about November, 2014.

13. On July 24, 2015, Lt. Turner was picked by Superintendent Michael Harrison to command the Homicide Unit and working with Sgt. Hansche.

14. Commander Doug Eckert was an unclassified at-will employee who served at the discretion of Superintendent Harrison and supervised Plaintiff. Although the policy indicated that Lt. Jimmie Turner was supervised by Commander Eckert, in practice, Lt.

Turner was supervised by Deputy Superintendent Rannie Mushatt who was over Commander Doug Eckert.

Sergeant Peter K. Hansche's Relationship With Lt. Jimmie Turner

15.     By all accounts, Plaintiff is a "by the book" type law enforcement officer and Lt. Jimmie Turner was not.

16.     After Lt. Turner took command of the Homicide Unit, Sgt. Hansche became the target for sexual and racially inappropriate comments from Lt. Turner in an effort to force Sgt. Hansche into going along with Lt. Turner's every command without question regardless of the legality of his actions.

17.     As a result, Plaintiff was singled out by Lt. Turner and kept from being in certain squads because of his race and his inability to accept the sexual harassment. These actions and this conduct were open and obvious to other detectives in the unit and to Plaintiff's chain of command, Commander Eckert, who did nothing to report or discipline Lt. Turner.

18.     Lt. Turner would accuse Plaintiff and Sgt. Marc Amos (among others) of having a sexual relationship and would ask them questions like, 'who was the big spoon' and 'who was the little spoon.'

19.     Lt. Turner would use pejorative language insinuating that Plaintiff and Sgt. Marc Amos or Detective Thomas Ripp were homosexuals and in a romantic relationship in order to embarrass Plaintiff and demonstrate dominance over his subordinate. Any person who befriended Plaintiff was accused of being in a

homosexual relationship with Plaintiff. These comments were open and obvious and overheard by many individuals in the Homicide Unit.

20. On or about late September, 2016, Sgt. Hansche was standing in Sgt. McMullen's office with Sgt. Marc Amos. Sgt. Hansche's back was facing the doorway. Lt. Turner came into the office behind Sgt. Hansche and nonconsensually embraced Sgt. Hansche's body allowing the front of his body to press against the back and buttocks of Sgt. Hansche. Lt. Turner put his face between Sgt. Hansche's shoulders and gripped his chest area securely. The Plaintiff was paralyzed, shocked and embarrassed. Plaintiff also feared retaliation if he resisted or reacted to the advance.

21. In October, 2016, Plaintiff was sitting in an open area in the office near Detective Bruce Brueggeman's desk speaking to him. Suddenly, Lt. Jimmie Turner comes up from behind Plaintiff and kisses him on the top of the head. Plaintiff was upset but instead of going along with the he did not respond to it for fear of adverse employment actions which later came to fruition.

22. In late November or early December, 2017, Plaintiff was in Lt. Turner's office discussing a work issue. Lt. Turner asked Plaintiff if he could call him a "cracker." Plaintiff replied "I don't care" but felt he had no choice but to allow the behavior or fear retaliation.

23. Lt. Turner was charged with forming squads of detectives to work on homicide cases. Lt. Turner's decisions in grouping the squads resulted in racial segregation. Plaintiff's squad was comprised mostly of white individuals. Lt. Turner's squad was

mostly African-American individuals. If there was a white detective in Lt. Turner's squad he would refer to them as the "token."

24. On March 18, 2017 Lt. Turner approached Det. Bruce Brueggeman and Sgt. Hansche at a murder scene. Lt. Turner commented that Det. Brueggeman was a "good looking man" and that he would have been there earlier but he was in the shower touching himself while thinking of Det. Brueggeman. Plaintiff was offended by the comment but felt that there was nothing he could as he was in the middle of a murder scene and Lt. Turner would consistently engage in similar misconduct in front of supervisors with no consequences.

25. During the last six months of 2017, Lt. Turner would consistently berate Plaintiff for his appearance and clothing stating that he was "dressing without iron" in front of others in order to intimidate and dominate Plaintiff with homophobic and toxic remarks. As a result, other supervisors started also excluding Plaintiff from supervisory meetings and emails following behind Lt. Turner's example.[3]

Quid Pro Quo

26. Plaintiff's decision to reject Lt. Turner's advances and not encourage or go along with the sexual and racial harassment made him a victim of tangible retaliatory actions.

27. For example, Plaintiff was left out of significant events and ostracized. Lt. Turner created and supervised a Special Squad of all "supervisors" in the Homicide Unit excluding only Plaintiff. This group was tasked with reviewing active cases and

---

[3] See attached Exhibit B- Email from Cmdr. Eckert to Sergeants 1/21/18

taking them away from detectives if they thought they were immediately actionable-meaning an arrest or search warrant was imminent.

28. Plaintiff was on annual leave from December 6, 2017 until noon of December 14, 2017. Upon returning Plaintiff was met with a serious family emergency which required his immediate and full attention

29. Due to the nature of the emergency, Plaintiff called Mike Miller, the NOPD Officer Assistance Program counselor at 7:40 a.m. on December 14, 2017 and reported the situation. Plaintiff asked Miller for help in notifying his chain of command. Mike Miller replied, "consider it handled." Due to the nature of the emergency and the effect it had on the Plaintiff, asking for assistance from the OAP program was proper procedure and reasonable.

30. At 9:39 a.m. Mike Miller texted Plaintiff that Lt. Turner stated he was going to extend Plaintiff's annual leave.

31. The next day, Plaintiff was texted by Commander Eckert and ordered to call Lt. Turner. Plaintiff was ordered to call Lt. Turner while he was in the hospital dealing with the emergency. Lt Turner brashly stated that he had not heard from the Plaintiff. Lt. Turner asked if Plaintiff had read his work email. At this point, Plaintiff was emotionally beaten down and replied that he had not seen any emails due to his family emergency. NOPD Email Policy did not require Plaintiff to answer emails while he was off duty.

32. After checking his emails, Plaintiff was advised by Deputy Chief Mushatt that his leave request would not be addressed unless he contacted Lt. Turner first.

33. Plaintiff was forced to explain to his harasser, Lt. Turner, that he went through the NOPD Officer Assistance Program to notify his chain of command because he did not want to discuss the serious family issues and the impact these issues had on Plaintiff with Lt. Turner. Plaintiff also told Lt. Turner that he would be back to work once the NOPD Psychologist released him to full duty.

34. Despite Plaintiff's fragile emotional state and family emergency, Lt. Turner threatened to put Plaintiff into the payroll system as Leave Without Pay even though Plaintiff had over 2700 hours of sick time and 380 of annual leave. Plaintiff then contacted the Police Association of New Orleans ("PANO") for assistance all the while still dealing with a family crisis.

35. PANO sent Lt. Turner an email regarding the situation, but Lt. Turner denied Plaintiff's request for leave and sanctioned Plaintiff with Leave Without Pay.

36. Deputy Chief Mushatt's insistence that Plaintiff go through chain of command and Lt. Turner's unjustified refusal to grant his request for emergency medical leave action caused emotional and mental anguish to the Plaintiff who was already in a precarious and emergent family situation and for which he was seeking psychological treatment from the NOPD Psychologist.

37. Further, upon Plaintiff's return to work he discovered that the Squad he commanded was quickly dismantled by Lt. Turner in retaliation for the same reasons Lt. Turner sexually harassed him- for not submitting to Lt. Turner's illegal demands. Plaintiff was forced to sit at the office without assigned detectives doing office work.

A Hostile Work Environment Targeted At Sergeant Peter K. Hansche and Other Men

38. The abusive treatment at all levels, particularly by Lt. Turner, was open and obvious to most of the detectives in the Homicide Unit.

39. Detective Barret Morton stated that he saw Lt. Jimmie Turner kiss the Plaintiff's head and that he heard Lt. Turner say that Sgt. Hansche and Sgt. Amos were lovers[4].

40. In the same statement, Detective Barret Morton admits that the Homicide Unit is racially divided and states that "Um, I think, uh you know, hostile work environment, that could be perceived because of people's perceptions of things that are going on."[5]

41. Detective Gregory Hamilton, when asked, "Have you personally heard any member of the Department telling sexually oriented jokes or making references into someone's sexual preferences" answers, "Uh, they kind of do that all the time.[6]" He further states that Plaintiff was assigned all white detectives and that there is a racial divide in the unit.

42. Lt. Turner would show favoritisim towards black employees that would condone and/or engage in the sexual misconduct and racial discrimination. For example, he took a squad car away from Detective Andrew Waldron to favor another black detective and would interfere with murder investigations to give favorable opportunites for his "allies" to "solve" case files instead of doing what is in the best interest of the public-solving all homicides with due process and respect of the law, not favoritistm.

---

[4] Exhibit C-Excerpt of Statement of Detective Barret Morton 2-4-18
[5] Id.
[6] Exhibit D-Excerpt of Statement of Gregory Hamilton dated 2-26-18

43. Lt. Turner would make statements to Det. Brett Mathes, a white man, such as "all you white boys look alike to me" and deliberately and consistently call Det. Mathes by the wrong name, "Daniel."

44. Lt. Turner also made sexually suggestive statements to Det. Brueggeman about wanting to ride on the back of his motorcycle while rubbing Det. Brueggeman's shoulders[7].

No Real Open-Door Policy and No Way to Complain

45. Commander Eckert paid only "lip service" to his open door policy and admitted in a statement that "So, the open door policy is, look, you can come in if you have frustrations; if you need help but **it's not just to come and cry about who you work for, because I will sit and I'll tell anybody, well, that we all have responsibilities.** So you know, it, that open door policy goes a long way." **"It could be taken, it could be mistaken[8]."**

46. Effectively, Sgt. Hansche's chain of command above the harasser stated under oath that Sgt. Hansche could not come to him to cry about who he works for, namely, Lt. Jimmie Turner.

47. Commander Eckert and Deputy Chief Mushatt chose not to actively monitor the workplace as required by New Orleans Police Department Policy and/or ignored the harassment and allowed Lt. Jimmie Turner to act in violation of the law, unfettered.

Civil Service Investigation

---

[7] Exhibit E- Statement of Det. Brueggeman.
[8] Exhibit F- Statement of Commander Eckert 3/14/18

48.     After years of fearing and experiencing adverse employment actions from Lt. Turner because Plaintiff would not submit to the sexual harassment or go along with the racial discrimination, Plaintiff was at an emotional breaking point and filed a report with the NOPD Public Intergrity Bureau (PIB).

49.     Superintendent Mushatt made the determination that the grievance was "a crock.[9]"

50.     PIB conducted an investigation while Plaintiff simultaneously pursued an EEOC Charge. After a hearing, the three chief panel sustained most of the Plaintiff's charges. Lt. Turner was demoted to Sergeant and suspended for 25 days without pay.

51.     However, in spite of sustaining a finding of sexual harassment Sergeant Turner still retains his supervisory rank over other officers to date.

52.     The discipline received by Lt. Turner was a slap on the wrist in comparison to the discipline given to others for less egregious offenses. Other offenders with less egregious sexual misconduct were demoted to positions without supervisory duties.

Farragher/Ellerth Defense Inapplicable.

53.     In 2014 the position of "Commander" was moved to an "unclassified" position allowing Superintendent Michael Harrison unchecked power to demote and cut pay for Commanders.  In 2017, this power was permanently granted to  Superintendent Harrison

---

[9] Exhibit G- Excerpt from Statement of Superintendent Mushatt

54. This policy allows Superintendent Michael Harrison sole discretion and control in appointing and dismissing the commanders who run the department's eight geographic districts and its other major divisions.

55. All three major police associations objected to the plan as well as the Civil Service Commission's staff objected to the proposal, saying it represented an end-run around the regular, test-based promotion process for officers.

56. Harrison admitted that the creation of 16 positions that officers can be promoted to and removed from purely at his discretion is an "exceptional" situation for a department where most officers are protected by civil service rules.

57. This critical structural change renders the *Farragher/Ellerth* defense inapplicable because the City unreasonably created an environment where Commanders were more concerned about losing their promotion and taking a pay cut rather than "actively monitoring work environment." Any decision which Superintendent Harrison did not support could easily jeapordize a Commander's livelihood rendering many of its policies unenforceable including its discrimination policy. Those that were not political allies of Superintendent Harrison could easily be removed.

58. This environment caused unjust discrepancies resulting in some supervisors accused of sexual harassment to merely receive a letter of reprimand and still receive promotions whereas others lost their ability to supervise others. Lt. Turner did not lose the ability to supervise others and received nothing more than a slap on the wrist in light of the egregiousness of his actions.

## FIRST CAUSE OF ACTION
### SEX AND RACE DISCRIMINATION UNDER TITLE VII AS AGAINST CITY OF NEW ORLEANS

59. Sgt. Hansche repeats every allegation in the preceding allegations as if set forth in this cause of action.

60. Sgt. Hansche, as a white man, belongs to a protected class protected under Title VII.

61. Lt. Turner discriminated against and harassed Sgt. Hansche because of his gender and race.

62. The conduct was sufficiently pervasive to alter the terms and conditions of his employment due to the frequency, the physical threat, and interference with his work.

63. To the extent the City Of New Orleans has an anti-discrimination policy, it was ineffective to prevent the hostile work environment for two reasons 1) no same-sex harassment training was disseminated and 2) the City created a culture of discouraging complaints by causing supervisors to become "yes men" so as not to risk their jobs making the defense under *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) inapplicable.

## SECOND CAUSE OF ACTION
### RETALIATION UNDER TITLE VII AS AGAINST the CITY OF NEW ORLEANS

64. Sgt. Hansche repeats every allegation in the preceding allegations as if set forth in this cause of action.

65. Sgt. Hansche complained to his supervisors of the sexual and race discrimination, harassment and assault, thereby engaging in protected conduct.

66. Lt. Jimmie Turner, Commander Eckert, and Deputy Chief Mushatt were aware of these complaints.

67. In retaliation for those complaints, the City of New Orleans has denied use of his sick leave, annual leave, ostracized Plaintiff, and stripped Plaintiff of his squad which constitutes adverse employment action and ultimate employment decisions.

68. In retaliation for those complaints Lt. Turner made a complaint that Plaintiff interfered with witnesses in connection with the investigation. Lt. Turner's complaint was later determined to be "unfounded."

69. Lt. Turner's complaint as a response to Plaintiff's complaint was in violation of Chapter 26.3 (8) of the New Orleans Police Department Operation Manual. However, the Public Integrity Bureau investigated it anyway despite the glaring policy prohibiting any action against a complainant. Further the policy warns that retaliation can result in termination yet Lt. Turner was not terminated.

70. A causal connection exists between the protected conduct and retaliatory acts.

## THIRD CAUSE OF ACTION
### HOSTILE WORK ENVIRONMENT UNDER TITLE VII AS AGAINST CITY OF NEW ORLEANS

71. Sgt. Hansche repeats every allegation in the preceding allegations as if set forth in this cause of action.

72. Lt. Jimmie Turner's harassment of Sgt. Hansche was unrelenting going far beyond a few isolated incidents. The frequency of his harassment polluted the work environment to the point that it destroyed the stability of the work environment for male employees, including Sgt. Hansche.

73. Lt. Jimmie Turner created an abusive work environment for men.

74. Lt. Jimmie Turner's harassment was sufficiently severe and pervasive that it altered the conditions of Sgt. Hansche employment.

75. Sgt. Hansche was subject to Lt. Jimmie Turner's unwanted harassment.

76. Lt. Jimmie Turner's harassment was based on Sgt. Hansche's gender (male) and race (white).

77. Lt. Jimmie Turner's harassment affected terms, conditions and privileges of Sgt. Hansche's employment.

78. The City of New Orleans knew of Jimmie Turner's harassment of Sgt. Hansche and others but did nothing to stop it. The City of New Orleans in fact, promoted detectives accused of harassment and downgraded complaints made by others in the same Homicide Unit.

## FOURTH CAUSE OF ACTION
### SEX AND RACE DISCRIMINATION UNDER LOUSIANA STATUTE AS AGAINST CITY OF NEW ORLEANS

79.     Sgt. Hansche repeats every allegation in the preceding allegations as if set forth in this cause of action.

80.     The above acts and practices of the Defendant constitute unlawful discriminatory employment practices within the meaning of the Louisiana Employment Discrimination Law, La. R.S. 23:301 et al.

81.     Pursuant to the requirements of La. R.S. 23:303(c), Plaintiff provided written notice to Defendants through his dual EEOC and Louisiana Commission on Human Rights Charge, which was filed in an attempt to amicably settle this matter to no avail.

82.     As a result of Defendants' acts, Plaintiff has suffered and will continue to suffer monetary damages and damages for mental anguish and humiliation unless and until this Court grants relief.

## FIFTH CAUSE OF ACTION
### SEXUAL ASSAULT UNDER LOUSIANA COMMON LAW AS AGAINST JIMMIE TURNER

83.     Sgt. Hansche repeats every allegation in the preceding allegations as if set forth in this cause of action.

84.     In late September, 2016, Lt. Jimme Turner intentionally assaulted Sgt. Hansche by coming up from behind Sgt. Hansche and embracing him so that the front of his groin area would touch the buttocks of Sgt. Hansche without his consent.

85.     Further, in October, 2016, Jimmie Turner kissed Sgt. Hansche on the top of his head without his consent.

86.     As a result, Plaintiff suffered damages including emotional distress and mental anguish.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Sgt. Hansche respectfully requests this Court grant the following relief:

a.      A declaratory judgment that the practices complained of herein are unlawful under Title VII, and La. R.S. 23:301 *et seq.*, the Louisiana Employment Discrimination law and La. Code of Civil Procedure 2315;

b.      Enjoining and permanently restraining these Title VII violations and requiring Defendants to implement a viable anti-discrimination policy and training for employees and supervisors to end quid por quo, same-sex harassment and discrimination which endangers employee's safety and care;

c.      An award of back pay, front pay, liquidated damages, lost benefits, and other damages for lost compensation Sgt. Hansche suffered to be determined at trial;

d.      An award of punitive damages;

e.      An award of emotional distress-based damages;

f.      An award of prejudgment and post-judgment interest;

g.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h.      Such other and further relief as this Court deems just and proper.

DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff Sgt. Hansche demands a trial by jury on all questions of fact the Complaint raises.

Dated:    New Orleans, Louisiana
          September 17, 2019

                                    Respectfully Submitted,
                                    VASQUEZ LAW OFFICE


                                    /s/Jessica Vasquez
                                    Jessica Vasquez (La #27124)
                                    400 Poydras Street, Ste. 900
                                    New Orleans, LA 70130
                                    Tel: 504.571.9582
                                    Fax: 504.684.1449
                                    jvasquez@vasquezlawoffice.com
                                    Attorney for Sergeant Peter K. Hansche